UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MARIO ESPINOZA,

Petitioner,

v.

CALVIN JOHNSON, *et al.*,

Respondents.

Case No. 3:21-cv-00198-MMD-CSD

ORDER

## I. SUMMARY

Petitioner Mario Espinoza, a Nevada state prisoner, filed a Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Second Amended Petition" (ECF No. 68)). This habeas matter is before the Court on Respondents' Motion to Dismiss ("Motion" (ECF No. 71)).[1] For the reasons discussed below, the Court grants Respondents' Motion and dismisses the Second Amended Petition as time barred.

## II. PROCEDURAL HISTORY

Espinoza challenges a 2017 conviction and sentence imposed by the Eighth Judicial District Court for Clark County. He entered a guilty plea for first degree kidnapping resulting in substantial bodily harm and first degree murder. (ECF No. 24-3.) The state district court sentenced Espinoza to two concurrent terms of life without the possibility of parole. (*Id.*) He did not file a direct appeal.

On November 13, 2018, Espinoza filed a *pro se* state habeas petition. (ECF No. 24-6.) Following appointment of counsel, he filed a supplemental petition. (ECF No. 24-13.) The state district court denied postconviction relief and the Nevada Supreme Court affirmed the denial of relief. (ECF Nos. 24-23, 25-17.)

---

[1]Petitioner responded (ECF No. 74) and Respondents replied (ECF No. 76). Respondents filed an unopposed motion to extend time to file a reply (ECF No. 75), which the Court grants.

In April 2021, Espinoza initiated the instant federal habeas proceedings. (ECF No. 1.) Following appointment of counsel, he filed first and second amended petitions. (ECF Nos. 30, 40, 68.) In October 2023, the Court granted Espinoza's request to stay the case. (ECF Nos. 53, 61.)

Espinoza filed a counseled second state habeas petition. (ECF No. 70-6.) The state district court denied his second state habeas petition, finding that he failed to overcome the procedural bar by alleging actual innocence. (ECF No. 70-17.) The Nevada Supreme Court affirmed the denial of relief. (ECF No. 70-32.) After granting Espinoza's motion to reopen, he filed his Second Amended Petition. (ECF Nos. 67, 68.)

## III. DISCUSSION

Respondents move to dismiss the Second Amended Petition as untimely and argue that Grounds One and Two are procedurally defaulted and that Ground Three is procedurally defaulted, in part. (ECF No. 71.) Espinoza counters that he can overcome any procedural hurdle because he can demonstrate that he is actually innocent. He also asserts that he is entitled to equitable tolling, that his claims relate back to his *pro se* petition, and that he can overcome procedural default based on ineffective assistance of postconviction counsel. The Court will address Espinoza's claim of actual innocence before turning to Respondents' timeliness argument and equitable tolling.

### a. Actual Innocence

#### i. Additional Background Information

Salvador Ramirez ("Ramirez") and his partner, Danielle Demello ("Demello"), lived together along with their two daughters. (ECF No. 22-1 at 14-16.) Ramirez was in custody at the Nevada Department of Corrections ("NDOC") at the same time as Espinoza. (*Id.*) While in custody, Espinoza's wife, Marianne, would visit Espinoza and Marianne met Demello on visiting days. (*Id.*) In April 2016, Demello offered to have Espinoza and Marianne live with her and Ramirez. (*Id.*)

On May 14, 2016, Ramirez and Demello had friends visiting their home in the evening. (*Id.* at 17-19.) Espinoza had been binging meth for about three days and had

used meth that night. (ECF No. 22-3 at 24.) Espinoza became paranoid that Ramirez, Demello, Marianne, and Demello's daughters were plotting to kill him. (*Id.*) In the early morning hours, Espinoza retrieved a gun and directed Marianne into the living room. (*Id.*)

Espinoza went into a room where the children slept, and Marianne joined him in that room. (ECF No. 22-1 at 23-24.) The children woke up and began to cry as Espinoza looked around the room. (*Id.* at 25-26.) Espinoza then pointed the gun at Marianne. (*Id.* 26-28.)

Ramirez entered the room and attempted to calm Espinoza. (*Id.* at 28.) Ramirez, Demello, Marianne, Espinoza and the two daughters were in the room. (*Id.* at 28-29.) One daughter left the bedroom, but Demello's ten-year-old daughter, J.R., remained in the room. (*Id.* at 29-31.) Espinoza had them close the bedroom door, turn off the lights, and then turn the lights back on. (*Id.*) Demello asked Espinoza to allow J.R. to leave, but he refused. (*Id.* at 30-31.)

Espinoza fired twice, hitting Ramirez and Demello, and he continued to pull the trigger. (*Id.* at 33-34.) Because it seemed like Espinoza ran out of bullets, Ramirez prepared to tackle Espinoza. (*Id.* at 34.) Espinoza fired the gun again and hit Ramirez who fell to the ground. (*Id.*) Ramirez died from his injuries. (ECF No. 24-2 at 7.)

Espinoza then grabbed Marianne and Demello, moved them to the kitchen, grabbed a large knife from the kitchen, and walked them toward the door. (ECF No. 22-1 at 34.) Demello fought Espinoza over the knife. (*Id.* 34-35.) Espinoza grabbed a folding chair and a mirror, attempting to strike Demello. (*Id.* 35-41.) After Demello escaped outside, Espinoza followed her with a shovel and attempted to strike her. (*Id.* at 41-42.) Espinoza took off his clothes. (*Id.* at 42.) A neighbor arrived and tried to mace Espinoza. (*Id.* at 43.) The police arrived as Espinoza was fleeing the scene. (ECF No. 22-3 at 23.)

**ii. Newly Presented Evidence**

**1. Childhood, Mental Health History, And Drug Abuse**

Espinoza experienced a difficult childhood. His father, Mario Espinoza ("Mario Sr.") abused him and his sister sexually, physically, and mentally, and his mother, Tina

Fiumara ("Tina") left the family when Espinoza was young. (ECF No. 74 at 3-5.) Both of his parents have mental health issues. His father suffered from schizophrenia and drug and alcohol addiction and has been instutionalized for lengthy periods. Mario Sr. exhibited paranoid delusions.

Mario Sr. forced Espinoza to take drugs from a young age and Espinoza began using meth frequently from the age of sixteen. Espinoza began to exhibit depression, suicidal ideation, and paranoia. Through his mid-20s, Espinoza was frequently in custody or committed to hospitals. He was admitted in April 2006 following a drug binge and hospital records describe him as paranoid. (ECF No. 41-4 at 8.) When in custody with NDOC in 2006 to 2008, Espinoza was prescribed psychotropic medications. (ECF Nos. 41-4, 43.) He was admitted to the hospital on multiple occassions for suicidal ideation and expressed paranoid beliefs about his wife. (*Id.*)

Espinoza sought treatment repeatedly in October 2012. He was seen in a hospital for hallucinations after meth use and was later diagnosed with meth-induced psychosis. (*Id.*) He was seen at a hospital after binging meth for two days and was acting aggressively towards police officers. He was diagnosed with psychosis and amphetamine abuse. (*Id.*)

He was admitted to a hospital for suicidal ideation after a meth relapse in July 2013. (ECF No. 41-4 at 9.) He was admitted to rehab in Arizona in August 2013, but relapsed and received treatment for paranoid ideation, and was diagnosed with meth-induced psychosis. (*Id.*) In October 2013, he was again admitted to the hospital for suicidal and paranoid thoughts. (*Id.*) He received treatment for auditory hallucinations and paranoia consistent with meth-induced psychosis resembling schizophrenia. (*Id.*) In November 2013, Espinoza received treatment at a mental health center and was diagnosed with schizoaffective disorder and post-traumatic stress disorder. (*Id.*) In December 2013, he was admitted to a hospital after becoming paranoid, running into traffic, and calling paramedics for help. (*Id.*) He was diagnosed with schizophrenia. (*Id.*)

While in custody from 2014 to 2016, prison records demonstrate a history of meth

use, drug-induced psychosis, and psychiatric decomposition. (*Id*. at 10.) Espinoza was released in March 2016 and after receiving treatment, he was diagnosed with schizoaffective disorder and post-traumatic stress disorder. He received treatment in April 2016 for suicidal ideation. (*Id*.)

**2. Expert Report**

In October 2022, Dr. Edward French, an expert in neuropharmacology, conducted a three-hour evaluation of Espinoza. (ECF No. 41-2.) Dr. French described "the profound mental disturbance that can occur as a result of repeated use of methamphetamine over several days, which is what occurred prior to the shootings in this case." (*Id*. at 11.) Dr. French described Espinoza's mental health history and behaviors while using meth as a stimulant-use disorder with meth-induced psychosis. (*Id*.)

Dr. French noted Espinoza "was convinced that [Ramirez], a member of a rival gang, was out to kill him and that [Ramirez] possessed a weapon," and that "[t]his kind of false belief is symptomatic of an individual suffering from methamphetamine-induced psychosis." (*Id*. at 13.) He listed the hallmark signs of meth-induced psychosis, including loss of impulse control, inability to make rational decisions, inability to control one's behavior, inability to perceive reality, paranoia, delusions, and hallucinations. (*Id*. at 14.) He noted that individuals with a history of chronic meth use and abuse are unable to formulate rational thoughts or make decisions based on reality, but instead their decision-making is impaired by their perceptions, delusions, and hallucinations. (*Id*. at 14-15.)

Dr. French opined that Espinoza "lacked an appreciation for what he was doing when he took 'self-protective' actions against [Ramirez] and [Demello] being 'fearful for his life.'" (*Id*. at 15.) He believed that "it is more likely that [Espinoza] was acting in a manner consistent with symptoms of a methamphetamine-induced psychosis causing a lack of consideration for the consequences of his actions given his history and his drug use." (*Id*.)

**iii. Analysis**

A convincing showing of actual innocence may enable habeas petitioners to

overcome a procedural bar to consideration of the merits of their constitutional claims. *Schlup v. Delo*, 513 U.S. 298, 314–16 (1995). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citation omitted). "[I]f a petitioner…presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. However, the Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare." *McQuiggin,* 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

To demonstrate actual innocence, "a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 316). Put another way, "actual innocence" is established when, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-28).

The petitioner must establish factual innocence of the crime, and not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003). To demonstrate actual innocence to overcome a procedural bar under *McQuiggin* and *Schlup*, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. To be "new" for purposes of an actual-innocence claim, the evidence need only be "newly presented," *i.e.*, reliable evidence **"**that was not presented at trial**,"** as opposed to "newly discovered" and thus previously unavailable. *Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003).

Actual-innocence review incorporates "all evidence," including (i) evidence alleged to have been improperly admitted (but with due regard to its questionable reliability), (ii) evidence tenably claimed to have been wrongfully excluded by the trial court, (iii) evidence the defense did not present to the jury at trial, or (iv) evidence that became available only after the trial. *Id*. (citing *Schlup*, 513 U.S. at 327-28).

The Supreme Court has recognized the possibility of actual innocence in the guilty plea context, but in only in a case where there was a retroactive intervening change in the law. *See Bousley v. United States*, 523 U.S. 614, 623-24 (1998). In one case, the Ninth Circuit assumed that a claim of actual innocence was available to a petitioner who plead guilty but declined to resolve the issue because the petitioner failed to meet the *Schlup* standard. *See Smith v. Baldwin*, 510 F.3d 1127, 1140 & n.9 (9th Cir. 2007).

Espinoza argues that he was unable to premeditate or deliberate or form specific intent because he was experiencing meth-induced psychosis. He asserts that he is therefore innocent of first-degree murder and first-degree kidnapping. Espinoza relies on Dr. French's report concluding that Espinoza was experiencing a meth-induced psychosis that precluded him from thinking or acting rationally.

The Court finds that Espinoza fails to establish on the basis of Dr. French's opinion and any additional newly presented evidence that he suffered from meth-induced psychosis rendering him actually innocent of first degree murder and first degree kidnapping because it would negate the specific intent elements of such crimes. As noted by the Nevada Supreme Court in affirming the denial of Espinoza's second state habeas petition:

> [T]he record belies the premise of Espinoza's actual innocence claims—that Espinoza could not form specific intent. The district court correctly found that Espinoza repeatedly stated his intent to kill the victim. And the new expert report posited that the killing arose from a mistaken belief that the victim posed a threat, not that Espinoza did not intend to kill the victim. The expert report thus would not likely prevent a reasonable juror from finding that Espinoza had the specific intent to kill. We therefore conclude that the district court did not err in rejecting Espinoza's claim of actual innocence.

(ECF No. 70-32 at 4.)

In assessing "'how reasonable jurors would react to the overall, newly supplemented record,'" *House v. Bell*, 547 U.S. 518, 538 (2006), the Court cannot conclude that "it is more likely than not that no reasonable juror would have convicted [Espinoza]." *Schlup*, 513 U.S. at 327. Espinoza's "new" evidence does not demonstrate factual innocence. He does not proffer exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. *Schlup*, 513 U.S. at 865. The Court finds that Espinoza has not established a gateway claim of actual innocence.

**b. Equitable Tolling**

Espinoza acknowledges that the Antiterrorism and Effective Death Penalty Act ("AEDPA") deadline to file his federal petition was October 12, 2020. (ECF No. 74 at 24.) Espinoza, however, argues 196 days of equitable tolling is warranted because (1) his state postconviction attorney erroneously told him he had a full year after the Nevada Supreme Court's remittitur to file a timely federal habeas petition; and (2) he experienced extensive prison lockdowns due to the COVID-19 pandemic from July 2020 through April 2021.

The one-year period of limitation of 28 U.S.C. § 2244(d)(1) is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

In the first requirement of equitable tolling, a petitioner must pursue his rights with "reasonable diligence," rather than "maximum feasible diligence." *Holland*, 560 U.S. at 653. "[I]t is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc). "Second, and relatedly, it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy." *Id.*

Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." *Id.* at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007). "[I]t is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy.'" *Smith*, 953 F.3d at 600.

Espinoza has not met the high threshold of demonstrating that extraordinary circumstances prevented him from litigating a federal habeas petition. An attorney's miscalculation of the limitations period and negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling in a non-capital case. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001). In *Miranda v. Castro*, 292 F.3d 1063 (9th Cir. 2002), the Ninth Circuit Court of Appeals considered and rejected an attorney's miscalculation of the deadline as sufficient showing of extraordinary circumstances. In that case, the petitioner filed his federal petition after the expiration of the one-year statute of limitations. *Id*. at 1065. The petitioner's appointed appellate counsel sent the petitioner a letter informing him that counsel's representation has ended and incorrectly identified the federal habeas petition filing date. *Id*. at 1066. The Ninth Circuit noted that the petitioner "had no right to the assistance of his appointed appellate counsel regarding post-conviction relief…" *Id*. at 1068. The Ninth Circuit concluded that the attorney's miscalculation of the limitations period and her negligence in general did not constitute extraordinary circumstances sufficient to warrant equitable tolling. *Id*.

Here, Espinoza's attorney in state postconviction proceedings stated in her declaration that she did not "specifically recall whether [she] spoke to him about the

deadline for filing a pro se federal habeas petition," but she "may have told him he had one year from the date of the Nevada Supreme Court's remittitur but [did not] specifically recall telling him that." (ECF No. 52-1.) Even assuming Espinoza's state postconviction counsel told him an erroneous calculation for filing the federal petition, Espinoza's case is similar to *Miranda*. The general negligence of counsel and the miscalculation of the limitations period by counsel do not constitute extraordinary circumstances sufficient to warrant equitable tolling.

Regarding the prison's lockdown and restrictions, the Court acknowledges and appreciates that prison lockdowns and related restrictions create obstacles for prisoners to access the law library and needed legal resources. However, importantly, Espinoza fails to demonstrate that he was prevented from filing his federal habeas petition due to the lockdowns. *See Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (holding that petitioner's stay in administrative segregation with limited access to the law library and a copier did not justify equitable tolling because it was neither "extraordinary" nor did it make it "impossible" for him to file his petition in a timely manner); *Frye*, 273 F.3d at 1146 (explaining that the Ninth Circuit Court of Appeals has "rejected the argument that lack of access to library materials automatically qualified as grounds for equitable tolling").

This Court received filings from *pro se* petitioners incarcerated in the NDOC during the pandemic, negating a finding that it was impossible for Espinoza to file legal documents. Espinoza fails to show that he exercised, or attempted to exercise, any reasonable diligence that was thwarted by the pandemic restrictions or that prevented him from mailing communications to and from the Court or that prevented him from otherwise pursuing his rights. He does not show that he submitted any grievance, inmate request forms, or complaints regarding a lack of access to the law library, to legal materials, or to the ability to file documents.

Under the totality of the circumstances, Espinoza has not established that some extraordinary circumstance stood in his way, and thus, he is not entitled to equitable tolling. The Court grants Respondents' Motion to Dismiss the Second Amended Petiiton

as time barred. As the Court holds that this action is barred by the statute of limitations, the Court need not address and declines to address the other arguments asserted, including relation back and procedural default.

**c. Evidentiary Hearing**

Espinoza moves for an evidentiary hearing on his gateway claim of actual innocence and equitable tolling argument. (ECF No. 74 at 36-37.) Evidentiary hearings are authorized in federal habeas corpus actions by Rule 8 of the Rules Governing § 2254 Cases. However, an evidentiary hearing is not required if the issues can be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise."); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Espinoza does not show that factual development by an evidentiary hearing is warranted. The Court resolves Espinoza's arguments of actual innocence and equitable tolling on the briefing of the parties and on the extensive record before the Court without need for further factual development.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## V. CONCLUSION

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 71) is granted. The Second Amended Petition (ECF No. 68) is dismissed with prejudice as time barred.

It is further ordered that a certificate of appealability is denied, as reasonable jurists would not find the district court's dismissal of the federal petition to be debatable or wrong, for the reasons discussed herein.

It is further ordered that Respondent's Motion to Extend (ECF No. 75) is granted *nunc pro tunc*.

It is further ordered that the Clerk of the Court is instructed to enter final judgment accordingly and close this case.

DATED THIS 1st Day of September 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE